COLUMBIA MUTUAL INSURANCE COMPANY *v.*
ESTATE OF Allen BAKER

CA 98-494                                      984 S.W.2d 829

Court of Appeals of Arkansas
Division III
Opinion delivered January 20, 1999

*McMillan, Turner, McCorkle & Curry,* by: *E. Shane Springs* and *Toney D. McMillan,* for appellant.

*McKenzie, McRae, Vasser & Barber,* by: *A. Glenn Vasser,* for appellee.

S AM BIRD, Judge. Allen Baker was employed by Kenneth Madlock, doing business as Madlock Auto Glass & Body

Shop (Madlock). On May 3, 1994, Baker, while in the course and scope of his employment, was operating a car owned by a Madlock customer when he was struck and killed by an automobile being driven in a negligent manner by Matthew Soto. The vehicle driven by Soto was not covered by a liability insurance policy. Madlock had a Garage Owner's Liability Policy issued by appellant, Columbia Mutual Insurance Company, that was in full force and effect at the time of Baker's accident. The appellee in this case is the Estate of Allen Baker.

The customer's vehicle that was being driven by Baker at the time of the accident was insured, and appellee was paid $25,000 under the uninsured motorist coverage of that policy. Also, Baker had insurance coverage on his personal automobile, and appellee was paid $25,000 under the uninsured motorist coverage of that policy. Appellee also made a written demand on appellant for payment of the minimum statutory limits for uninsured motorist coverage under Madlock's Garage Owner's Liability Policy, but appellant denied that Madlock's policy contained uninsured motorist coverage and refused payment.

Appellee then filed suit against appellant alleging that the appellant had failed to offer uninsured motorist coverage to Madlock when appellant's Garage Owner's Liability Policy was issued and that appellant had failed to obtain from Madlock a written rejection of uninsured motorist coverage under that policy.

The parties entered into a stipulation of facts by which they agreed that, at the time of the accident, Madlock had in full force and effect a Garage Owner's Liability Policy that had been issued by appellant. They also agreed that uninsured motorist coverage was offered to Madlock when he renewed his policy, that Madlock did not have uninsured motorist coverage under his prior policy, and that Madlock requested that his coverage under the new policy (the one issued by appellant) be issued with the same coverages as had existed in Madlock's previous policy, "i.e. without uninsured motorist coverage." The parties also stipulated that neither the agency issuing the policy nor appellant had obtained a written rejection from Madlock for uninsured or underinsured

motorist coverage when Madlock applied for and obtained appellant's Garage Owner's Liability Policy.

Both parties filed motions for summary judgment. In appellant's motion for summary judgment, it claimed that it was not required by Arkansas law to provide uninsured motorist protection on Madlock's garage owner's policy. In the alternative, the appellant argued that even if it was required to provide uninsured motorist coverage with its Garage Owner's Liability Policy, uninsured motorist coverage had been offered to and rejected by Madlock.

Appellee's motion for summary judgment contended that the appellant should be required to pay the minimum statutory uninsured motorist coverage limits because appellant did not obtain a proper rejection of uninsured motorist coverage from its policy holder, Madlock.

The court granted appellee's motion for summary judgment, finding that the Garage Owner's Liability Policy issued by the appellant to Madlock afforded automobile liability insurance coverage to Baker as an insured of the customer's car. Further, the court found that because the policy afforded automobile liability insurance coverage, the policy also was required to contain uninsured motorist coverage in an amount equal to the minimum statutory limits as required by Ark. Code Ann. § 27-19-605 (Repl. 1992), unless such compulsory uninsured motorist coverage was properly rejected by Madlock. In granting appellee's motion for summary judgment, the court found that "there was not a clear, intentional and knowing, written or verbal, rejection of uninsured coverage by the insured."

The court awarded judgment in favor of appellee in the amount of $25,000 (the statutory minimum limits required by Arkansas law for uninsured motorist coverage), a 12% penalty and $5,000 attorney's fees, plus interest at the rate of 10% per annum on $25,000 from October 11, 1994, until December 16, 1997. Appellant brings this appeal.

██ ██ Summary judgment is to be granted by a trial court only when it is clear that no genuine issues of material fact exist to

be litigated and the moving party is entitled to judgment as a matter of law. *Grayson v. Bank of Little Rock*, 334 Ark. 180, 971 S.W.2d 788 (1998). Normally, on review of the granting of a motion for summary judgment, this court would view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* However, where the parties have agreed that no genuine issue as to any material fact exists, that rule becomes inapplicable. *Id.* Therefore, this court determines only whether the appellees were entitled to judgment as a matter of law. *Id.* We will not reverse unless the court's findings were clearly erroneous. *Id.*

Both parties in the case at bar filed motions for summary judgment, contending that no issues of material fact exist, and the parties entered into a stipulation of facts. Based upon our standard of review, we affirm as to appellant's first point on appeal, and we reverse and remand as to appellant's second point on appeal.

For appellant's first point on appeal, it states that a Garage Owner's Liability Policy is not the functional equivalent of an automobile liability policy. Therefore, Ark. Code Ann. § 23-89-403 (Repl. 1992) does not require an insurance company to provide uninsured motorist protection.

Arkansas Code Annotated section 23-89-403 states in part:

(a)(1) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto and is not less than limits described in § 27-19-605, under provisions filed with and approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom.

In *First Security Bank v. Doe*, 297 Ark. 254, 760 S.W.2d 863 (1988), the supreme court stated that subsection (a) of Ark. Code Ann. § 23-89-403 requires uninsured motorist coverage if

the policy issued covers liability arising from the use of a vehicle. The court wrote,

> We conclude the statute expressed the intent of the general assembly to include in uninsured motorist coverage the persons included in liability coverage. The uninsured motorist coverage requirement is for the protection of "persons insured . . . who are legally entitled to recover damages from owners or operators of uninsured motor vehicles. . . ."

*Id.* at 257, 760 S.W.2d at 865.

The appellant states that the purpose of a Garage Owner's Liability Policy is to allow the garage owner to protect himself from liability from any harm caused to the vehicles owned by the customers while he is in possession of those vehicles. The appellant also states that to broaden the scope of a garage owner's liability policy to include uninsured motorist coverage would contravene the General Assembly's intention.

We disagree, and we hold that the court did not err in finding that Madlock's policy included automobile liability insurance coverage and that Baker was a person protected by such coverage at the time of the accident that resulted in his death. Therefore, uninsured motorist coverage should have been offered to Madlock and properly rejected by him.

Evidence that the Garage Owner's Liability Policy acts also as an automobile liability insurance policy can be found from a reading of the policy. The "Form Schedule" of the policy indicates that Edition 12 92 of Form No. BP0404 provides coverage for "Hired Auto and Non-owned Auto Liability." Form No. BP0404 is, in fact, attached to the policy. These coverages provide liability insurance for bodily injury or property damage arising out of the maintenance or use of a "hired auto" or "non-owned" auto. The term "non-owned" auto is defined in the policy "as any auto you do not own, lease, hire, rent or borrow used in connection with your garage business described in the Declarations." A customer's vehicle would fit within the definition of a "non-owned" auto.

Furthermore, a form in the policy entitled "Garage and Dealers Section" shows that liability insurance coverage with limits in the amount of $1,000,000 is provided under the policy for autos included in "Auto Symbol" 29. A legend at the bottom of the form indicates that auto symbol 29 includes "non-owned autos used in garage bus."

■ Because the policy itself offered automobile liability insurance, the insurance company was obligated under Arkansas law, pursuant to Ark. Code Ann. § 23-89-403(a), to offer uninsured motorist coverage.

For appellant's second point on appeal, it argues that even if this court finds that the policy offered automobile liability insurance, it is still not responsible for the statutory minimum required because Madlock rejected the uninsured motorist coverage. Both parties admit that the insurance was offered. However, the appellee argues that the rejection was neither a written rejection nor was it a clear, intentional and knowing rejection, as required by Arkansas law.

Subsection (2) of Ark. Code Ann. § 23-89-403 states:

> (2) However, the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage, and this rejection shall continue until withdrawn in writing by the insured.

The parties' stipulation of facts stated:

> Ininsured [sic] motorist coverage was offered to Kenneth Madlock doing business as Madlock's Autoglass & Bodyshop in Hope, Arkansas when Mr. Madlock renewed his policy with his local agent, Anderson-Frazier Insurance Company of Hope, Arkansas. Mr. Madlock did not have uninsured motorist coverage under his policy, and Mr. Madlock requested that his coverage under the new policy (Columbia Insurance) be issued with the same coverages as Madlock previously had — i.e., without uninsured motorist coverage.

■ There is no dispute as to whether the coverage was offered. However, as we read the stipulation, it merely says that Madlock stated that he wanted to renew the policy with the same

coverage as his previous policy, which, as both parties admit, did not include uninsured motorist coverage. Therefore, we do not believe that the stipulation provides a basis for the trial court's determination that there was not "a clear, intentional and knowing, written or verbal, rejection of uninsured motorist coverage." From the briefs presented and the stipulation, we are unable to determine how and from what evidence the trail court concluded that Madlock had or had not rejected the coverage. Therefore, a fact issue remains as to whether Madlock rejected the coverage. Because this finding by the trial court was clearly erroneous, we reverse as to this point and hold that the appellee was not entitled to a judgment as a matter of law.

Affirmed in part and reversed and remanded in part.

ROBBINS, C.J., and MEADS, J., agree.