Keith L. GRAYSON and Grayson & Grayson, P.A. *v.*
BANK of LITTLE ROCK

98-149                                               971 S.W.2d 788

Supreme Court of Arkansas
Opinion delivered July 9, 1998

*Grayson Holleman & Grayson, P.A.*, by: *Keith L. Grayson* and *Leslie H. Herrington*, for appellants/cross-appellees.

*Buzbee & Hawk PLC*, by: *J.R. Buzbee*, for appellees/cross-appellants.

RAY THORNTON, Justice. The principal question in this case is whether an attorney is liable for conversion for distributing the cash proceeds of a settlement agreement, which was subject to

a security interest, when the secured party neither obtained a writ of garnishment nor an order of delivery. The appellants, Keith Grayson and Grayson & Grayson, P.A., were the attorneys for American Eagle Contracting Corporation (AECC) in a Chapter 11 bankruptcy proceeding. The appellee Bank of Little Rock (the Bank) held a perfected security interest in all of AECC's corporate assets, including after-acquired property. When AECC defaulted on its loan with the Bank, the Bank sought to take possession of its secured collateral, including the cash proceeds of a settlement agreement reached between AECC and Marshall Insurance Agency (Marshall) in another lawsuit. Grayson, who was also the attorney in the Marshall lawsuit, refused the Bank's demand to turn over the proceeds. He retained a portion of those proceeds as attorney's fees, paid the bankruptcy trustee, and remitted the remainder to his client, AECC. The Bank brought action against Grayson for conversion. Finding no disputed issues of material fact, the trial court granted the Bank's motion for summary judgment, ruling that Grayson converted that portion of the proceeds which he retained as his fees. Grayson appeals from that decision on several grounds. The Bank cross-appeals, contending that the court erred when it declined to find conversion of the entire settlement recovery. We affirm in part, reverse in part, and remand with instructions.

AECC petitioned for bankruptcy relief after it defaulted on its bank loans. Following the petition, the Bank and AECC entered into a temporary cash collateral order. Grayson signed that order on behalf of AECC. In that order, AECC acknowledged that the Bank had a lien on the assets of AECC's estate, including accounts receivable, contract rights, general intangibles, and the proceeds of those assets. The order further provided that the lien extended to all postpetition assets.

During the course of AECC's bankruptcy proceeding, Grayson filed suit against Marshall on behalf of AECC to recover an overpayment of workers' compensation insurance premiums. The parties settled for $7500. When Grayson sent notice of the settlement to all AECC creditors, the Bank objected, alleging that it had a security interest in the settlement proceeds and was therefore entitled to the proceeds as part of the Bank's cash collateral.

After learning of Grayson's lawsuit against Marshall, the Bank obtained release from the bankruptcy's automatic-stay provision. The Bank then obtained an order of replevin to recover all of its secured collateral from AECC, and mailed this order to Grayson.

Soon after the bankruptcy judge awarded Grayson attorney fees in the amount $12,069, the judge dismissed the case. Grayson then distributed the Marshall settlement proceeds. He retained $3500 for attorney fees earned in the bankruptcy case,[1] and paid $1000 to the bankruptcy trustee and the $3000 balance to AECC.

After Grayson distributed the settlement proceeds, the Bank sued Grayson for conversion. The Bank claimed that Grayson was well aware of the Bank's security interest in those proceeds yet wrongfully distributed them after refusing the Bank's demand. The Bank also sued AECC in replevin to recover all secured collateral in AECC's possession. Grayson petitioned the court to consolidate the cases, but that motion was denied. The trial court then decided the conversion matter on summary judgment in favor of the Bank in the amount of $3500. The parties agreed that there were no genuine issues of material fact in dispute.

However, Grayson argues that, as a matter of law, the Bank was not entitled to the settlement proceeds because it had not taken the necessary steps to gain a possessory interest in those proceeds. Grayson complains that because the Bank never served a writ of garnishment or an order of delivery on him, he was relieved of any duty to preserve the collateral for the Bank. The Bank argues that it did not need to obtain an order of delivery or writ of garnishment to obtain a possessory interest. Instead, the Bank argues that its objection to the motion to settle the pending Marshall lawsuit, the temporary cash order, and the order of replevin served to give Grayson notice of the Bank's perfected-security interest and its right to possess the settlement proceeds. The Bank contends that Grayson's refusal to turn over the proceeds effected a conversion, and on cross-appeal, alleges that the

---

[1] In response to interrogatories, Mr. Grayson stated that he actually recovered $11,600 in fees in the bankruptcy case; he received a $7500 pre-petition retainer, $600 for a stay-violation, and then recovered $3500 from the Marshall settlement.

trial court erred when it did not find Grayson liable for conversion of the entire $7500 amount. We agree.

■ The law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Wallace v. Broyles*, 331 Ark. 58, 66, 961 S.W.2d 712, 715 (1998) (citing *Pugh v. Griggs*, 327 Ark. 577, 824 S.W.2d 387 (1992)). Normally, we view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* However, where the parties have agreed that there is no genuine issue as to any material fact, that rule is inapplicable, and we simply determine whether the appellees were entitled to judgment as a matter of law. *City of Little Rock v. Pfeifer*, 318 Ark. 679, 684, 887 S.W.2d 296, 298 (1994). The trial court will not be reversed unless the court's findings are clearly erroneous. *See McQuillan v. Mercedes-Benz Credit Corp*, 331 Ark. 242, 961 S.W.2d 729 (1998); Ark. R. Civ. P. 52(a).

The first question we address is whether Grayson had a lien on the settlement proceeds. Grayson argues that, as the attorney of record for AECC, he is entitled to an attorney's lien on the settlement proceeds pursuant to Ark. Code Ann. § 4-9-310 (Repl. 1991). That section provides the following:

> § 4-9-310 Priority of certain liens arising by operation of law.
>
> When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon *goods* in possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise. (Emphasis added.)

Under the same title, "goods" are defined as "all things which are moveable at the time the security interest attaches or which are fixtures (§ 4-9-313), but does not include money . . . ." Ark. Code Ann. § 4-9-105(h) (Supp. 1997).

Grayson acknowledges that cash proceeds of a lawsuit are not "goods." Nevertheless, he argues that this section applies here

because the "spirit" of the statute recognizes that a person ought to be compensated for services he rendered before anyone else may collect on a lien, regardless of whether the lien is for goods or intangibles.

Grayson offers no convincing authority or argument in support of his contention. We do not consider assignments of error that are unsupported by convincing legal authority or argument unless it is apparent without further research that the argument is well taken. *Porter v. Harshfield*, 329 Ark. 130, 139, 948 S.W.2d 83, 87 (1997); *J & J Bonding, Inc. v. State*, 330 Ark. 599, 602, 955 S.W.2d 516, 518 (1997). Without convincing authority, we cannot accept Grayson's argument when the General Assembly made it clear that money does not fall within the definition of goods.

We note that attorneys acquire a lien on their client's cause of action under Ark. Code Ann. §§ 16-22-301 – 304 (Repl. 1994). Subsection 16-22-304(a) provides that this lien attaches to the proceeds of the lawsuit upon service of a written notice to the adverse party. Subsection 16-22-304(b) further provides that, in the absence of notice, this lien attaches "from and after the commencement of an action . . . in the action . . . in which the attorney . . . has been employed to represent the client."

This section gives an attorney's lien on the proceeds of the same cause of action for which the attorney has been employed to represent the client. The lien attaches when summons is issued. *See Union Sawmill Co. v. Pace, Campbell & Davis*, 163 Ark. 598, 260 S.W. 428 (1924). The abstract of the record shows that Grayson intended to apply the settlement proceeds against his bankruptcy cause of action. To the extent that Grayson is claiming a lien on the proceeds of the Marshall suit for services he performed in the bankruptcy proceeding, the attorney-lien statute is not applicable. This interpretation is consistent with the well-recognized general rule, which states that an attorney's lien extends only to fees and disbursements rendered in the particular action in which they were incurred, and does not cover a general balance due the attorney, or charges rendered in other causes, or charges in causes not intimately connected with the particular

action. Wanda E. Wakefield, *Attorney's Charging Lien as Including Services Rendered or Disbursements Made in Other Than Instant Action or Proceeding*, 23 A.L.R.4th 336 (1983). *See Davis v. Webber*, 66 Ark. 190, 49 S.W. 822 (1899) (holding that in a suit to enforce an attorney's lien for services rendered in a certain suit on property received as a result of that suit, it was error to include in the judgment a fee for services rendered in a different suit). *Cf. Camp v. Park*, 226 Ark. 1026, 295 S.W.2d 613 (1956) (extending the attorney's lien to suits arising from, and incidental to, the main cause of action).

Because we hold that Grayson does not have an attorney's lien on the settlement proceeds, we do not need to consider his next argument that his lien is superior to the Bank's perfected-security interest.

■ We address next the issue of conversion. Grayson argues that, because the Bank failed to obtain a writ of garnishment, the Bank did not have a right to possession of the collateral secured by its security agreement, and therefore, there could be no conversion. Grayson's argument lacks merit. Under our secured-transactions law, when a debtor defaults under a security agreement, the "secured party has on default the right to take possession of the collateral." Ark. Code. Ann. § 4-9-503 (Repl. 1991). The secured party may enforce its claim by reducing the claim to judgment, foreclosing, or otherwise enforcing the security interest by any available judicial procedure. § 4-9-501. Further, these rights and remedies are cumulative and their exercise will not effect an election of inconsistent remedies. *Id.*; *Williams v. Westinghouse Credit Corp.*, 250 Ark. 1065, 468 S.W.2d 761 (1971).

Under the terms of the security agreement here, the debtor, AECC, was in default when it stopped making payments on its loan with the Bank. The Bank acquired the right to possession of AECC's assets at that time. To recover its collateral, the Bank filed a replevin action against AECC. In that action, the trial court found that the Bank had a perfected security interest in AECC's corporate assets and its proceeds; AECC was in default of its loan; and that the Bank was entitled to possession of the property. The court also ruled that the circuit clerk was authorized to issue an

order of delivery. When the Bank discovered that Grayson held funds subject to its security interest, it made a demand for those funds, which Grayson refused. The Bank then pursued this conversion action against Grayson.

■ ■ We have held that an action in conversion is appropriate when a creditor is entitled to possession of money after default and a transferee of the debtor has wrongly refused his demand to surrender the collateral. *See Reed v. Hamilton*, 315 Ark. 56, 864 S.W.2d 845 (1993); *City Nat'l Bank v. Goodwin*, 301 Ark. 182, 783 S.W.2d 335 (1990); *see also*, 1A PETER F. COOGAN ET AL., SECURED TRANSACTIONS UNDER THE UNIFORM COMMERCIAL CODE § 8.08[2][b] (1988).

In *Goodwin*, we defined this tort as follows:

> Conversion is the exercise of dominion over property in violation of the rights of the owner or person entitled to possession. Conversion can only result from conduct intended to affect property. The intent required is not conscious wrongdoing but rather an intent to exercise dominion or control over the goods that is in fact inconsistent with the plaintiff's rights.

*Goodwin*, 301 Ark. at 187, 783 S.W.2d at 338 (internal citations omitted). If the defendant exercises control over the goods in exclusion or defiance of the owner's rights, it is a conversion, whether it is for defendant's own use or another's use. *Reed v. Hamilton*, 315 Ark. 56, 59, 864 S.W.2d 845, 847 (1993). When Grayson distributed the settlement proceeds, he exercised dominion over the property that the Bank was entitled, by law, to possess. Because the material facts are not disputed, we cannot say the trial court clearly erred when it granted summary judgment on the issue of conversion as a matter of law.

■ As his final argument, Grayson contends that the trial court erred when it refused to consolidate its case with the case pending against AECC. He argues that both actions involved the recovery of the settlement proceeds, and arose under the same set of facts and circumstances. He also claims that AECC was an indispensable party to the action. Ark. R. Civ. P. 42(a) provides for consolidation when actions that involve a common question of law or fact are pending before the court. Consolidation exists for

convenience and economy in judicial administration. *Hunter v. McDaniel Constr. Co.*, 274 Ark. 178, 623 S.W.2d 196 (1981). Further, it is within the sound discretion of the trial court to order consolidation. *Missouri Pac. R.R. v. Arkansas Sheriff's Boys' Ranch*, 280 Ark. 53, 655 S.W.2d 389 (1983).

It is a fundamental rule that the appellant is required to provide an abstract that contains information from the record necessary to an understanding of the questions presented to the court for decision. Ark. Sup. Ct. R. 4-2(a)(6); *Richmond v. State*, 326 Ark. 728, 934 S.W.2d 214 (1996).

Grayson has failed to provide us with an adequate abstract of the record to consider the issue of consolidation. Ark. Sup. Ct. R. 4-2(b)(2). Without the pleadings from the suit against AECC, we cannot conduct a meaningful review of Grayson's argument. Because he gives us no information on which he bases his contention, we cannot consider whether, in fact, the cases are so similar that the interests of justice would have been served by consolidation. We affirm this finding of the trial court.

On cross-appeal, the Bank contends that the court erred when it found that Grayson converted only $3500 and awarded that amount to the Bank. Instead, the Bank argues that Grayson converted the entire $7500 settlement when he kept $3500, paid $1000 to the U.S. Trustee, and paid the balance to AECC.

The act of dominion over property in violation of the rights of the owner or person entitled to possession is conversion, even if the property is turned over to a third party. *Reed v. Hamilton*, 315 Ark. 56, 59, 864 S.W.2d 845, 847 (1993) (holding that an act of conversion may occur even when the alleged converter derives no personal benefit from the transfer). The law is settled that an agent may become a converter when he receives property on behalf of his principal, if the agent negotiated the transaction, even though he may have acted in good-faith ignorance of the plaintiff's rights. 1 FOWLER V. HARPER ET AL., THE LAW OF TORTS § 2.15A (3rd ed. 1996).

We hold that Grayson converted the entire $7500, whether he was acting for himself or as AECC's agent when he

distributed the settlement proceeds. As we stated above, the Bank was entitled to possession of all cash proceeds when AECC defaulted on its loan. When Grayson subsequently refused the Bank's demand to turn over the settlement proceeds, he became liable for conversion as to the entire amount. The trial court erred when it found that Grayson converted only that portion of the settlement proceeds that he kept for himself.

The trial court's finding of conversion is affirmed. However, we reverse and remand with instructions to modify the judgment to reflect damages consistent with this opinion.